LOTTINGER, Judge.
This is an action ex delicto for damages sustained when the plaintiff, Leroy Wheel *195 er, was injured by a falling boxcar door. From a judgment in favor of defendant, plaintiff has appealed.
The record points out that on June 3, 1965, the plaintiff was employed by the Ace Brick Company, and was unloading bricks from a railroad boxcar onto a flatbed truck. He was working along with Clarence Antoine. The plaintiff had been doing this type of work for about eight months, and Antoine for three years for Ace Brick Company and some time prior with another employer. The boxcar had been moved onto a siding the day before. The car was owned by the Nashville, Chattanooga and St. Louis Railroad, but was brought to and left at the siding by the defendant, Illinois Central Railroad.
The first day’s work unloading the car was uneventful. On the second day, after plaintiff and Antoine had completed their day’s work, they were attempting to close the door when the accident happened. They had attempted to close the door by hand, but were unable to do so. They backed the truck they were loading as close to the boxcar as possible and parallel to it. After attaching a chain from the door to the frame of the truck, Antoine testified at the trial, that he eased off and slowly pulled the door in an attempt to close it. Before closing, the door jammed and jumped off its truck or guide and fell top first striking the plaintiff. In a deposition some two and one-half years earlier, Antoine described the same activities as follows:
“Page 61, Line 26:
‘A. No, Sir, I couldn’t see no reason how that door did jump off like it did because we—
Q. Do you know how—
A. I looked up at the top of it and checked the bottom of it too but some parts of these — -these doors where they go in there — where them lower rollers go through, some— some parts of it have been sprung already, and the roller probably gets jammed there, I guess, and won’t— just won’t roll no further.’
******
“Page 35, Line 7:
‘Q. You indicated that — how did you do it this time; after you got the slack out and you were sitting in the truck, what did you do with the truck ?
A. What you mean to close it or to open it?
Q. To close it that day when it fell on Leroy.
A. To close it, when I first took all the slack out, the truck wheels started spinning. In other words, it was just that hard.
Q. I see.
A. So I said, “Watch it, now.” And I backed up just a little bit,—
Q. Yes.
A. —and gave it a jerk.
Q. I see.’ ”
Antoine further testified that the top guide for the door was rusted out, and this allowed the door to fall away from the car. The plaintiff testified that he didn’t see any rust until the door did actually fall away from the boxcar. The assumption was that the top guide for the door was rusted, but had been painted over so that the rust was hidden.
The employee who inspected the train of which this particular car was a part testified, and from his records stated that no defect was seen on the particular car in question. He testified that both he and a fellow inspector walked the entire length of the train checking each piece of equipment in the train. Since at the time that the train was inspected, the doors on the boxcar were sealed, no attempt was made to open the boxcar doors. He further testified that it was not customary to check the top guide for a boxcar door unless *196 something looked suspicious. His records showed nothing of the kind.
The Trial Court held that since this defect was not obvious to normal inspection, the plaintiff had failed to show any negligence on the part of the defendant. With this ruling we agree.
Plaintiff cited to this Court the case of Marcus v. Kansas City Southern Railroad Company, 204 So.2d 676 (La.App. 3rd Cir. 1967), for the proposition that the Railroad Company was negligent in that it did not properly inspect a door on a freight car. We have read the above decision, and one point sticks out quite clearly, in that the Court was only presented with the issue of the plaintiff’s contributory negligence and the quantum of damages. There was no discussion at all as to the type of negligence of the defendant.
The plaintiff further cites the case of Franklin v. Illinois Cent. R. Co., 13 So.2d 125 (Orl.La.App.1943), writ denied, for the proposition that a sufficient inspection would require that the inspector walk the running board on the top of the boxcar and look at the top of the doors. There is no question in this Court’s mind, but that the more areas of a boxcar that are examined, the better the inspection. This is not to say, however, that we feel that the inspection performed in the instant case was not sufficient. Mr. Arnold, who was the inspector, testified that if a door looked suspicious, a closer inspection would have been given. Therefore, we do not find the Franklin case, supra, controlling.
The plaintiff cited the Federal case of Davis v. St. Louis Southwestern Ry. Co., 106 F.Supp. 547 (W.D.La.1952) affd. 204 F.2d 251. The Davis case, supra, was a situation wherein a gate at the end of a gondola car was not properly fastened and fell on a worker unloading the gondola. It seems that the gate fell because it was not properly fastened. This apparently was a defect that could have been noticed by inspection, whereas in the instant case, the defect could not have been noticed because the rust had been painted over.
We find that the inspection performed by the defendant in the case at bar was reasonable and adequate so as to discover any defects that were not latent. We do not feel that the plaintiff has sufficiently proven any negligence on the part of the defendant. Therefore, for the above and foregoing reasons the judgment of the Trial Court is affirmed.
Judgment affirmed.